**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**DANA CLINE,**

    Plaintiff,

**v.**                                              **CIVIL ACTION NO. 3:11-CV-102
(JUDGE GROH)**

**7-ELEVEN, INC.,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before this Court are the Defendant's Motion to Dismiss Plaintiff's Punitive Damages Claim, or, in the Alternative, Bifurcate It For Purposes of Trial [Doc. 41], filed September 14, 2012, the Plaintiff's Cross-Motion for Partial Summary Judgment as to Liability [Doc. 42], filed September 28, 2012, and the Defendant's Motion for Enlargement of Time in Which to Respond to Plaintiff's Motion for Partial Summary Judgment [Doc. 45], filed October 8, 2012. These motions have since been fully briefed and are now ripe for adjudication. Having reviewed and considered the arguments of the parties, this Court concludes that the Defendant's Motion to Dismiss Plaintiff's Punitive Damages Claim, or, in the Alternative, Bifurcate It For Purposes of Trial, must be **GRANTED IN PART** and **DENIED IN PART**, that the Plaintiff's Cross-Motion for Partial Summary Judgment as to Liability must be **DENIED**, and that the Defendant's Motion for Enlargement of Time in Which to Respond to Plaintiff's Motion for Partial Summary Judgment is **MOOT**.

## BACKGROUND

On July 1, 2009, the Plaintiff entered the Defendant's 7-Eleven store in Ranson,

West Virginia. It had been raining that day, although the parties dispute to what extent. Immediately inside the door, as the Plaintiff stepped off the inside door mat and onto the vinyl tile floor, the Plaintiff slipped and/or stumbled, ultimately catching herself on the store counter before hitting the floor. As a result, the Plaintiff claims to have suffered permanent injuries, including a fracture and partial tears of various tendons and ligaments in her ankle, for which she avers that she is likely to require surgery in the future.

The Plaintiff alleges that the Defendant "negligently, recklessly, and in disregard of its duties, failed to maintain its premises in good and safe condition by failing to mop the wet floor, by failing to dry the wet floor, and by failing to place signs warning of the wet floor." The Plaintiff asserts that after slipping, she observed a puddle of standing water on the vinyl tile.

The Defendants concedes that the mat immediately inside the entrance was wet, but denies the same with regard to the vinyl floor. It is furthermore contested whether or not a "wet floor" sign was present to warn customers coming in from the rain that the floor might contain wet spots.

The Plaintiff has retained an expert witness, Lawrence Dinoff, who has prepared a report which makes the following findings: (1) the store floor where the Plaintiff slipped was dangerously slippery when wet; (2) the store layout, floor materials and actions by the Defendant made it foreseeable that the floor where the Plaintiff fell would be wet and dangerously slippery during periods of rain; (3) the floor mats and floor maintenance at the store in question violated applicable standards for safe facilities and walkways and made the floor dangerous in a manner that caused the Plaintiff to slip; (4) even had a slippery floor warning sign been present, it would not have been a reasonable substitute for making

2

the floor safe nor would it have been an effective warning for persons walking from the doors to the sales counter; and (5) the Defendant's actions violated applicable codes and standards for safe buildings and walkways and created the dangerous conditions that caused the Plaintiff to slip and be injured.

On June 24, 2011, the Plaintiff filed the instant Complaint in the Circuit Court of Jefferson County, West Virginia [Doc. 2-1], asserting a cause of action against the Defendant for negligence. On November 22, 2011, the Defendant removed to this Court.

On September 14, 2012, the Defendant filed its Motion to Dismiss Plaintiff's Punitive Damages Claim, or, in the Alternative, Bifurcate It For Purposes of Trial [Doc. 41]. On September 28, 2012, the Plaintiff filed her Response to Defendant's Motion to Dismiss and Cross-Motion for Partial Summary Judgment as to Liability [Doc. 42]. On October 3, 2012, the Defendant filed a Rebuttal Memorandum in Support of Defendant's Motion to Dismiss or Bifurcate Plaintiff's Punitive Damages Claim [Doc. 43]. On October 8, 2012, the Defendant filed its Motion for Enlargement of Time in Which to Respond to Plaintiff's Motion for Partial Summary Judgment [Doc. 45]. On October 18, 2012, the Plaintiff filed a Rebuttal Memorandum in Support of Her Cross-Motion for Summary Judgment as to Liability [Doc. 53]. The Court has considered all of these briefs in reaching its decision.

## **DISCUSSION**

**I.     Jurisdiction**

This matter was timely removed to this Court pursuant to 28 U.S.C. §1446. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332, because the Plaintiff is a citizen of the State of West Virginia, the Defendant is a business corporation created under the laws of and having its principal place of business in the State

of Texas, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## II. Motion to Dismiss Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint or pleading. Defendants' motions to dismiss must be evaluated under the pleading standard set forth in Rule 8(a)(2) of the Federal Rules of Civil Procedure and in **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544 (2007). Rule 8(a)(2) requires only that the claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." **Twombly**, 550 U.S. at 555 (quoting **Conley v. Gibson**, 355 U.S. 41, 47 (1957)).

**Twombly** states that a well-pleaded complaint must aver "enough facts to state a claim to relief that is plausible on its face." **Id.** at 570. A "plausible" claim cannot be supported by mere "labels and conclusions." **Id.** at 555. Rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," **id.,** and critical elements of a claim must be, at a minimum, "suggested by the facts," **id.** at 569. This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." **Ashcroft v. Iqbal,** 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). In testing the sufficiency of the complaint, the Court must "accept[ ] all well-pleaded allegations in the plaintiff's complaint as true and draw[ ] all reasonable inferences from those facts in the plaintiff's favor." **Chao v. Rivendell Woods, Inc.,** 415 F.3d 342, 346 (4th Cir.2005); see also **Erickson v. Pardus,** 551 U.S. 89,

4

94 (2007) (all factual allegations in pleadings assumed to be true).

### III.     Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The existence of an alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment, unless the disputed fact is one that might affect the outcome of the litigation. ***JKC Holding Co. LLC v. Washington Sports Ventures, Inc.***, 264 F.3d 459, 465 (4th Cir. 2001) (citing ***Hooven-Lewis v. Caldera***, 249 F.3d 259, 265 (4th Cir.2001)). Mere speculation by the non-movant cannot create a genuine issue of material fact. ***Cox v. County of Prince William***, 249 F.3d 295, 299 (4th Cir.2001). A material fact is one where its existence or non-existence could result in a different jury verdict. *See* ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. ***Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, such inferences must "fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." ***Thompson Everett, Inc. v. National Cable Advert., L.P.***, 57 F.3d 1317, 1323 (4th Cir.1995).

The function of the judge at the summary judgment stage is not to determine the truth of a matter or to weigh credibility but to determine whether there is any genuine issue

of fact that can only properly be resolved by a finder of fact because it could reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

## IV. Analysis

### A. Defendant's Motion to Dismiss Plaintiff's Punitive Damages Claim, or, Alternatively, Bifurcate It For Purposes of Trial

Under West Virginia law:

> In actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive, or vindictive damages; these terms being synonymous.

Syl. Pt. 4, *Mayer v. Frobe*, 22 S.E. 58 (W. Va. 1895). The Defendant argues that the totality of the evidence in the instant case is insufficient to support an award of punitive damages. According to the Defendant, the Plaintiff's claim for punitives is not based on any purported fraud, malice, oppression, or wanton or willful conduct or criminal indifference. Rather, its is based on purported recklessness or gross negligence on the part of the Defendant.

While the West Virginia Supreme Court of Appeals has never provided its own definition of gross negligence, it has interpreted Virginia law to define gross negligence as the "degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another." *See* **Rutecki v. CSX Hotels, Inc.**, 290 Fed.Appx. 537, 542-43 (4th Cir. 2008) (citing **Dodrill v. Young**, 102 S.E.2d 724, 730 (W. Va. 1958)). Virginia courts have further defined gross negligence as "an utter disregard of prudence, amounting to complete neglect of the safety of another, such as to be shocking

6

to reasonable men," *id.* (citing **Finney v. Finney**, 125 S.E.2d 191, 193 (Va. 1962)), and the "absence of slight diligence, or the want of even scant care." *Id.* (citing **Colby v. Boyden**, 400 S.E.2d 184, 189 (Va. 1991)).

The Defendant argues that while the question of whether a defendant's negligence rises to the level of gross negligence is ordinarily one for the trier-of-fact, "it is only by the wildest stretch of reason and rhetoric that the fact-finder might hold the presence of a wet spot on the floor of a convenience store on a rainy day—and nothing more—arises to such a level."

The Plaintiff, on the other hand, argues that she will seek to introduce evidence through her expert witness that would permit a reasonable fact-finder to conclude that the Defendant's employees were reckless and grossly negligent when they allegedly took no action to make the dangerously wet floor safe for customers.

In rebuttal, the Defendant argues that the entirety of the Plaintiff's case for punitives amounts to an assertion that: (1) the vinyl tile floor was dangerously slippery when wet; and (2) no action was taken by store employees to dry the floor. The Defendant argues that there is nothing in these assertions which shocks the conscious or rises above the level of ordinary negligence.

Taking the Plaintiff's allegations as true, however, the Court concludes that the Plaintiff has made sufficient allegations of gross negligence to survive the Defendant's motion to dismiss. The Plaintiff has alleged that the Defendant knew or had reason to know that wet floors in its business created dangerous and hazardous conditions, that the Defendant knew or had reason to know that the failure to place mats on the floor to protect

7

customers from slipping when the floor was wet caused dangerous and hazardous conditions, and that the Defendant knew or had reason to know that the failure to place cones or warning signs near the door when the floor was wet caused dangerous and hazardous conditions. The difference between ordinary negligence and gross negligence is one of degree and, thus, constitutes a question for the trier-of-fact.

However, the Court takes into consideration the Defendant's alternative argument that even if the Plaintiff is permitted to present evidence on the issue of punitives, the Court should bifurcate the punitive damages issue. In a punitive damages action under West Virginia law, the plaintiff is entitled to admit evidence of the defendant's financial condition. *See* Syl. Pt. 3, **Garnes v. Fleming Landfill, Inc.**, 413 S.E.2d 897, 899-900 (W. Va. 1991). According to the Defendant, it would be prejudicial to permit the Plaintiff to introduce evidence of the Defendant's assets or net worth, which would be relevant only to assessment of the quantum of punitive damages to be awarded, unless there had first been a finding that the threshold standard for awarding punitive damages had been met.

The Defendant thus argues that the Court should, in its discretion, conduct the trial of this matter such that the first phase is limited to assessment of: (1) whether the Defendant is liable at all to the plaintiff for compensatory damages; (2) if so, the quantum of compensatory damages to be awarded; and (3) if so, whether the misconduct attributed to the Defendant rises to the threshold for imposition of punitive damages. Only if the last question is answered in the affirmative should the Court go on to conduct a second phase of the trial, where the quantum of punitive damages to be awarded should be assessed, at which point evidence of the Defendant's financial condition would become admissible.

While the bifurcation requested by the Defendant is not required under West Virginia

law, precedent for such bifurcation exists.  In ***Rohrbaugh v. Wal-Mart Stores, Inc.***, 572 S.E.2d 881 (W. Va. 2002), the West Virginia Supreme Court of Appeals upheld a trial court's *sua sponte* bifurcation of a punitive damages issue in an identical manner to that now advocated by the Defendant.  Specifically, "the trial court determined that the jury would first decide liability on the underlying claims, compensatory damages, and whether punitive damages should be awarded . . . [i]f each of these determinations were favorable to [the plaintiff], the same jury would then hear evidence involving the amount of punitive damages to be awarded." ***Id.*** at 890.  The West Virginia Supreme Court of Appeals found that "the trial court decided to bifurcate the amount of punitive damages issue in order 'to prevent the jury from being influenced on the substantive claim by evidence of Wal-Mart's enormous wealth, which data would have been introduced in order to enable the jury to gauge the amount of punitive damages to be awarded.'" ***Id.*** at 891.  The Supreme Court of Appeals found no abuse of discretion in the trial court's decision. ***Id.***

The Plaintiff makes no argument against bifurcation and, indeed, this Court finds the logic behind it to be sound.  FED. R. CIV. P. 42(b) provides that "for convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Bifurcating the punitive damages issue would avoid any risk of prejudice to the Defendant which might result from having evidence of the Defendant's financial condition introduced to a jury before that jury had considered the issue of entitlement to punitives in the first place.

Therefore, the trial of this matter will be bifurcated as follows: In the first phase of the

9

trial, the jury will hear evidence to determine: (1) whether the Defendant is liable at all to the Plaintiff for compensatory damages; (2) if so, the quantum of compensatory damages to be awarded; and (3) if so, whether the misconduct attributed to the Defendant rises to the level of recklessness or gross negligence such that the Defendant would be liable for punitive damages.  Only if the third inquiry is answered in the affirmative will the trial enter a second phase, in which the same jury will hear evidence regarding the quantum of punitive damages to be awarded, which would potentially include evidence of the Defendant's financial position.

In reaching this conclusion, the Court **GRANTS IN PART**, and **DENIES IN PART** the Defendant's Motion to Dismiss Punitive Damages Claim, or, in the Alternative, Bifurcate It For Purposes of Trial [Doc. 41].

**B.     The Plaintiff's Cross-Motion for Partial Summary Judgment as to Liability**

In order to establish a negligence claim in West Virginia, "[a] plaintiff must prove by a preponderance of the evidence that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately caused the injuries of the plaintiff." ***Neely v. Belk, Inc.***, 668 S.E.2d 189, 197 (W. Va. 2008).  Moreover, "[i]n order to make out a prima facie case of negligence in a slip and fall case, the invitee must show: (1) that the owner had actual or constructive knowledge of the foreign substance or defective condition; and (2) that the invitee had no knowledge of the substance or condition or was prevented by the owner from discovering it . . . the mere occurrence of a fall on the business premises is insufficient to prove negligence on the part of the proprietor." ***Hawkins v. U.S. Sports Ass'n, Inc.***, 633 S.E.2d 31, 35 (W. Va. 2006) (quoting ***McDonald v. University of West***

*Virginia Board of Trustees*, 444 S.E.2d 57, 60 (W. Va. 1994)).

The Plaintiff argues that its Expert's report definitively proves breach of the Defendant's duty to the Plaintiff as an invitee and causation with regard to the Plaintiff's injuries. The Plaintiff further argues that her own deposition testimony proves that she had no knowledge of water on the floor. The Plaintiff argues that the Defendant has not designated an expert to contradict the Plaintiff's Expert's conclusions, and that there thus exists no genuine issue of material fact with respect to the circumstances of the Plaintiff's fall and the dangerous condition of the floor. The Plaintiff accordingly argues that summary judgment is appropriate on the issue of liability.

The Defendant, on the other hand, argues that in addition to the question of liability on the Defendant's part, there also exists a question of contributory negligence on the part of the Plaintiff, which has been pleaded as part of the Defendant's Answer to the Plaintiff's Complaint. The Defendant argues that while contributory negligence is an affirmative defense on which the Defendant bears the burden of proof at trial, it is nevertheless the Plaintiff's burden in seeking summary judgment on the issue of liability to prove that under no set of circumstances can the defense prevail should the case proceed to trial.

The Defendant further argues that facts and evidence exist in this case which preclude the Plaintiff's motion for summary judgment on the issue of liability. By way of example, the Defendant asserts that a jury could easily conclude any or all of the following from the evidence in this case: (1) that the Plaintiff should have anticipated that the entrance to a busy convenience store on a rainy day might be wet and slippery and she was herself negligent to a greater or lesser degree in failing to observe the allegedly wet condition; (2) that the Plaintiff was negligent in failing to observe a wet floor sign 5' - 6' in

11

front of her as she entered the store; (3) that the Plaintiff was negligent in failing to heed a verbal warning that the floor might be wet given by a store employee as the Plaintiff entered the store; (4) that there was no standing water on the vinyl tile floor; and/or (5) that the occurrence was a result of the Plaintiff's own clumsiness, given the Defendant's allegation that records produced during discovery indicate that the Plaintiff has sought medical treatment for self-inflicted injuries no fewer than eight (8) times in the course of two years.

Finally, the Defendant argues that it has no obligation to rebut the conclusions of the Plaintiff's Expert with its own counter-expert. The Defendant argues that it is ultimately for the fact-finder to assay the credibility of both the Plaintiff and the Plaintiff's Expert's testimony.

Before the Court addresses the merits of the Plaintiff's Cross-Motion, the Court must address the Defendant's Motion for Enlargement of Time In Which to Respond to Plaintiff's Motion for Partial Summary Judgment. In said motion, the Defendant asserted that despite the Court's Scheduling Order providing for dispositive motions to be filed by September 17, 2012, and without leave of the Court, the Plaintiff filed her cross-motion for partial summary judgment on September 28, 2012. The Defendant argued that this late filing rendered it impracticable, if not altogether impossible, for the Defendant to timely reply to the Plaintiff's cross-motion for partial summary judgement by the October 1, 2012 deadline contained in the Scheduling Order for responses to dispositive motions. The Defendant accordingly requested that the Court extend the deadline for the Defendant to respond to the Plaintiff's cross-motion for partial summary judgment until October 19, 2012, bringing it in line with the normal 21 day time frame for responses to dispositive motions.

Pursuant to L R Civ P 7.02, responses to motions for summary judgment are ordinarily due 21 days from the date of service of the motion, and replies are due 14 days from the date of service of the response. In the instant case, however, the Court's Scheduling Order specifically provided that all dispositive motions were to be filed no later than September 17, 2012. The fact that the Plaintiff's cross-motion was contained within a response to the Defendant's motion did not change the fact that the Plaintiff's cross-motion was, in fact, itself a dispositive motion.

The Plaintiff's cross-motion for summary judgment as to liability cites to the Plaintiff's deposition, taken in June of 2012, as well as to the Plaintiff's responses to interrogatories, given in January of 2012. All of this information was available to the Plaintiff well before September 17, 2012. The Plaintiff did not seek leave of the Court to file a dispositive motion beyond that time, and the Plaintiff's motion does not appear to be based on any evidence gleaned from the Defendant's motion which would not have been available to the Plaintiff prior to September 17, 2012.

Therefore, the Court concludes that the Plaintiff's cross-motion was untimely filed and can be denied on those grounds. However, even considering the substance of the Plaintiff's cross-motion it must be denied. There are numerous disputed issues of material fact which preclude the granting of summary judgment in this case on the issue of liability. For one thing, there are disputes concerning such basic facts as whether there was water on the vinyl floor and whether there was a sign to warn the Plaintiff that the floor was slippery. Moreover, there are questions of fact concerning the Plaintiff's own contributory negligence. West Virginia is a "comparitive contributory negligence" State in which if a fact-finder determines that negligence on the part of an injured plaintiff constitutes fifty percent

or more of the proximate cause of injury, recovery is denied altogether. However, if a plaintiff's negligence constitutes less than fifty percent of the proximate cause of injury, recovery is permitted, but is reduced by the percent of the plaintiff's own negligence. *See* **Bradley v. Appalachian Power Co.**, 256 S.E.2d 879 (W. Va. 1979). Unresolved questions of contributory negligence preclude summary judgment. *See, e.g.,* **Brant v. Robinson Inv. Co.**, 435 F.2d 1345 (4th Cir. 1971) (evidence raised a substantial issue of fact whether plaintiff had been contributorily negligent, precluding summary judgment for defendant on that ground); **Kepner v. Fed. Nat. Mortg. Ass'n**, 222 F.Supp.2d 210, 215 (N.D.N.Y. 2002) (summary judgment for personal injury plaintiff denied where there existed unresolved questions of comparitive negligence).

Finally, the Defendant is not required to offer a counter-expert, and where the Defendant contests the assertions of the Plaintiff and her Expert, both the Plaintiff and her Expert are subject to cross-examination and to a credibility determination by a jury.

Therefore, the Plaintiff's Cross-Motion for Partial Summary Judgment as to Liability is **DENIED**.

## **CONCLUSION**

For the foregoing reasons, this Court concludes that the Defendant's Motion to Dismiss Plaintiff's Punitive Damages Claim, or, in the Alternative, Bifurcate It For Purposes of Trial **[Doc. 41]** should be, and hereby is, **GRANTED IN PART** and **DENIED IN PART**. In addition, this Court concludes that the Plaintiff's Cross-Motion for Partial Summary Judgment as to Liability **[Doc. 42]** should be, and hereby is, **DENIED**. Finally, this Court concludes that the Defendant's Motion for Enlargement of Time in Which to Respond to

Plaintiff's Motion for Partial Summary Judgment **[Doc. 45]** is **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record herein.

**DATED:** November 9, 2012.

GINA M. GROH
UNITED STATES DISTRICT JUDGE